**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ELOY FLORES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 5:15-cv-299 |
| | § | |
| ARCH INSURANCE COMPANY, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**ORDER**

On this date the Court considered Plaintiff's motion for leave to file his first amended original complaint. Docket no. 15. For the following reasons, the Court GRANTS the motion for leave to amend the complaint and the case is remanded to state court.

**I. BACKGROUND**

Plaintiff Eloy Flores alleges he was working on a construction site on Interstate Highway 10 in San Antonio, Bexar County, Texas when Patricia Mendez, an underinsured motorist, crashed into the construction site causing Flores various injuries. Docket no. 1-1, at 3. Flores brought this lawsuit in the 407th Judicial District Court of Bexar County on March 3, 2015 against Defendant Arch Insurance ("Arch"), his insurance provider at the time of the accident. Docket no. 1, at 1. Flores's claims against Arch include: (1) breach of duty of good faith and fair dealing ("breach of good faith"), (2) breach of contract, specifically failure to provide underinsured motorist ("UIM") benefits, (3) violations of the Deceptive Trade Practices Act (DTPA), and (4) violation of the Texas Insurance Code. Docket no. 1-1, at 4-5.

At the time of the accident on April 25, 2014, an insurance policy written by Arch was in effect.  Docket no. 1-3, at 2.  The insurance policy provides UIM benefits, to which Flores claims he is entitled.  Docket no. 1-1, at 3.  Flores alleges that Mendez did not have sufficient insurance coverage to compensate him for his injuries and there were no alternative insurance resources, so a claim for benefits with Arch was initiated.  *Id*.  Arch denies that Flores was entitled to UIM coverage benefits under his insurance policy.  Docket no. 1-3, at 2.  Flores filed a lawsuit in state court.  Docket no. 1-1.  Arch removed to federal court based on diversity jurisdiction on April 17, 2015.[1]  Docket no. 1.

In his state court petition, Flores named Arch as Defendant and described Mendez by name as the individual who "directly and proximately" caused bodily injury to Flores.  Docket no. 1-1, at 3.  Flores attempted to file an amended complaint in order to join Mendez as a defendant on May 5, 2015, but the amendment was stricken by the court on May 22, 2015, because he did not seek leave to file it and the amendment would have destroyed this Court's diversity jurisdiction.  Docket no. 5.  The attempted first amendment (the "Stricken Amendment") added Mendez as a defendant, making the following additions to the original complaint: (1) a claim of gross negligence against Patricia Mendez, (2) a claim of personal injury damages against both Arch and Mendez, and  (3) sections detailing DTPA and Insurance Code violation damages against Arch.  *Compare* docket no. 1-1, at 4-5, *with* docket no. 15-1, at 4-7.  The Court issued a scheduling and docket control order on the same day it granted the motion to strike the Stricken Amendment.  Docket no. 13.

 Flores filed this opposed motion for leave to file the first amended complaint on June 6, 2015.  Docket no. 15.  The first amended complaint (the "First Amended Complaint") is attached

---

[1] Arch is a citizen of the states of Missouri and New Jersey, organized under Missouri law, and claims New Jersey as its principal place of business.  Flores is a Texas resident and sought more than $75k in damages.

to the motion.  *Id*.  The First Amended Complaint and the Stricken Amendment are identical.  *Id*.

Mendez is a Texas resident.  Docket no. 15-1, at 3.  Permitting the First Amended Complaint

would thus destroy diversity.  Flores claims that Mendez was omitted from the original petition

in state court "due to an oversight" and that Mendez's "negligence is a required element to the

underinsured motorist claim."  Docket no. 15, at 3.  Arch filed a response in opposition to

Flores's motion for leave to file the First Amended Complaint.  Docket no. 16.

## II. STANDARD OF REVIEW

A party may remove an action from state court to federal court if the action is one over

which the federal court possesses subject-matter jurisdiction.  *See* 28 U.S.C. § 1441(a).  Removal

is proper in any case in which the federal court would have had original jurisdiction.  *Id*.  A

federal court has jurisdiction over controversies involving disputes between citizens of different

states where the amount in controversy exceeds $75,000.  28 U.S.C § 1332.  When determining

diversity jurisdiction, citizenship of the parties and the amount in controversy are considered by

the Court as they existed at the time of removal.  *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44

F.3d 256, 264-65 (5th Cir. 1995).  However, a post-removal joinder that adds a non-diverse party

will destroy diversity and eliminate the subject-matter jurisdiction of the court.  *See Hensgens v.*

*Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987).

Although Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend

"should be freely given when justice so requires" and Rule 20 permits joinder of parties, the

Court is obligated to scrutinize the proposed amendment more closely than an amendment that

does not destroy diversity.  *See Hensgens*, 833 F.2d at 1182.  The Court does this by balancing

the interests of the defendant to maintain the federal forum with the plaintiff's competing interest

of not having parallel lawsuits.  *See id*.  "[T]he balancing of these competing interests is not

served by a rigid distinction of whether the proposed added party is an indispensable or permissive party." *Id.* The Court looks at four factors to balance the competing interests: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for the amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities. *Id.*

After examining these factors, the Court is to balance the equities of the case and use discretion to decide whether to permit the amendment destroying diversity. *Id.* ("[T]he district court, when confronted with an amendment to add a nondiverse nonindispensable party, should use its discretion in deciding whether to allow that party to be added.").

### III. ANALYSIS

Flores and Mendez both reside in Texas. Docket no. 15-1, at 2. Arch is a citizen of the states of Missouri and New Jersey, organized under Missouri law, and claims New Jersey as its principal place of business. Docket no. 1, at 2. The addition of Mendez to this lawsuit would destroy diversity, so the Court must analyze the proposed amendment using the *Hensgens* factors. *See Hensgens*, 833 F.2d at 1182.

**1) The extent to which the purpose of the amendment is to defeat federal jurisdiction**

The first factor is "the extent to which the purpose of that amendment is to defeat federal jurisdiction." *Hensgens*, 833 F.2d at 1182. The first *Hensgens* factor has been described as the "most important" factor of the four. *Adey/Vandling, Ltd. v. Am. First Ins. Co.*, No. A-11-CV-1007-LY, 2012 WL 534838, at *4 (W.D. Tex. Feb. 17, 2012).

"When considering this first factor, courts take into account whether the plaintiff knew or should have known the identity of the non-diverse defendant when the state court complaint was filed." *Gallegos v. Safeco Ins. Co. of Ind.*, Civ. A. No. H–09–2777, 2009 WL 4730570, at *3

(S.D. Tex. Dec. 7, 2009) (internal quotations omitted).  "Courts have held that a plaintiff's failure to join a non-diverse defendant to an action prior to removal when such plaintiff knew of a non-diverse defendant's identity and activities suggests that the purpose of the amendment is to destroy diversity jurisdiction."  *Lowe v. Singh*, No. Civ. A. H-10-1811, 2010 WL 3359525, at *2 (S.D. Tex. Aug. 23, 2010) (quoting *Schindler v. Charles Schwab & Co.*, Inc., No. Civ. A. 05–0082, 2005 WL 1155862, at *3 (E.D. La. May 12, 2006)).  "However, courts have also recognized that when a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into litigation is to destroy diversity jurisdiction."  *Lowe*, 2010 WL 3359525, at *2 (emphasis original).  "Additionally, if a plaintiff moves to amend shortly after removal, some courts have viewed that as evidence of a primary purpose to defeat jurisdiction."  *Boyce v. CitiMortgage, Inc.*, 992 F. Supp. 2d 709, 717 (W.D. Tex. 2014) (J. Rodriguez).  "Other courts have found that if a plaintiff had not filed a motion for remand before moving to amend, the court could reasonably conclude that the primary reason to amend was not to defeat jurisdiction."  *Id*.

Here, Flores knew Mendez's identity and activities when the state court complaint was filed.  Flores filed the complaint describing Mendez as the motorist who was the "direct and proximate" cause of the injuries that necessitated the claim for UIM benefits.  Docket no. 1-1, at 2.  Cases where the plaintiff knew of the identity and activities of the non-diverse party when the state court petition was filed normally rule against allowing the amendment.  However, these cases usually involve invalid claims or other behavior that overtly suggests a primary purpose to defeat federal jurisdiction.  *See Gallegos*, 2009 WL 4730570, at *4 (where plaintiffs faced significant "legal obstacles" in seeking to impose liability on non-diverse party and did not add any extra claims against non-diverse party in amended complaint); *O'Connor v. Auto. Ins. Co. of*

*Hartford Connecticut*, 846 F. Supp. 39, 41 (E.D. Tex. 1994) ("Importantly, [Plaintiff] also faces legal obstacles to recovering against [the non-diverse party]."); *Anzures v. Prologis Tex. I LLC*, 886 F. Supp. 2d 555, 564 (W.D. Tex. 2012) (where the plaintiff had already improperly joined a different non-diverse defendant and had attempted to remand the case, which gave the court additional reasons beyond the plaintiff's knowledge of the non-diverse party's identity to deny the amendment); *Adey/Vandling.*, 2012 WL 534838, at *3, 12 (where the plaintiffs faced "significant legal hurdles to successfully recover against the adjustor and agents").

Flores certainly knew of Mendez's identity and activities before the case was removed. However, unlike *Azures*, Flores does not have a pattern of trying to avoid federal jurisdiction before attempting to add Mendez to this lawsuit.  No other motion to remand or motion for leave to amend was filed in this case before Flores attempted to add Mendez.  Still, the fact that Flores did not seek to amend the complaint until after removal, and the motion for leave to amend was filed "shortly after removal," are suspicious circumstances that weigh in favor of the Court denying leave to amend because they indicate the primary purpose for the amendment is to defeat diversity jurisdiction.  But that is not the end of the inquiry.

Flores gives two reasons other than defeating diversity for his amendment: (1) Mendez's name was omitted from the original complaint due to an "oversight" (docket no. 15, at 3), and (2) Flores is asserting a valid negligence claim against Mendez and needs a decision on that claim before he can recover on many of his claims against Arch.  *Id*. at 4.

Examining the original petition, the Court finds it plausible that Flores failed to include Mendez's name in Section VI "Negligence of Underinsured Motorist" by mistake and intended for Section VI to state a claim against Mendez for negligence.  Section VI, as the claim for negligence against Mendez is also styled in the First Amended Complaint, sets out all the

elements for a valid negligence claim against the underinsured motorist Mendez, and would not be stated against Arch because an insurance company cannot be a negligent underinsured motorist. Docket no. 1-1 at § 6. It alleges she breached a duty by driving while intoxicated that proximately caused Flores's injuries, but simply fails to name her as a defendant. This fact supports Flores's contention that Mendez's omission was a mistake and an oversight on Flores's attorney's part; not a deliberate decision to omit her. The existence, phrasing and structure of Section VI in the original complaint is evidence the primary purpose of the amendment is not to destroy diversity.

Second, unlike *Adey/Vandling*, *Gallegos*, and *O'Connor*, Flores does not face significant legal obstacles in recovering against Mendez. Flores specifically states a negligence claim against Mendez in the First Amended Complaint, adding her name that was not present in the state court complaint, and also adds a gross negligence claim against her. Docket no. 15-1, at 4. Negligence and gross negligence claims can be valid in Texas against drivers who were driving while intoxicated. *See*, *e.g.*, *Castro v. Hernandez-Davila*, 694 S.W.2d 575, 578 (Tex. App.—Corpus Christi 1985); *Barnhart v. Morales*, 459 S.W.3d 733, 753 (Tex. App.—Houston [14th Dist.] 2015). Flores states valid claims against Mendez and is seeking to assert them. Having valid claims is evidence that the primary purpose of the amendment is to state those claims against a defendant; not to destroy diversity.

Furthermore, under Texas law, an insurer providing UIM coverage must:

> provide for payment to the insured of all amounts that the insured is *legally entitled to recover* as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

Tex. Ins. Code Ann. § 1952.106 (West).  Therefore, a claim for UIM benefits cannot be decided until the insured has a "legal entitlement" to recover from an underinsured motorist.  *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006); *see also Hamburger v. State Farm Mut. Auto. Ins. Co*., 361 F.3d 875, 880 (5th Cir. Tex. 2004) ("Generally, establishment of an insured's legal entitlement [to recover UIM benefits against his insurance company] requires a settlement with the tortfeasor or a judicial determination following trial on the issue of the tortfeasor's liability." (internal quotations omitted)).  "An insured must establish the legal entitlement 'before there is a right to immediate performance and before there is a breach of contractual duty.'"  *See Accardo v. Am. First Lloyds Ins. Co.*, No. CIV.A. H-11-0008, 2013 WL 4829252, at *2 (S.D. Tex. Sept. 10, 2013) (quoting *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976), *reaff'd*, 17 S.W.3d 652 (Tex. 2000)).  "Texas courts construe the phrase 'legally entitled to recover' in UIM provisions to mean that the insured must establish the uninsured motorist's fault and the extent of the resulting damages before becoming entitled to recover UIM benefits." *Hamburger,* 361 F.3d at 880.  A liability finding for negligence against Mendez is a necessary prerequisite for Flores's claim that Arch breached a contract for failing to provide UIM benefits.  It seems likely that the purpose of Flores's amendment is to establish that prerequisite.

For all these reasons the Court finds the primary purpose of the amendment is not to destroy the diversity jurisdiction of this Court, despite the amendment being filed "shortly after removal," but to state valid claims against the underinsured motorist Mendez 1) to recover against her, and 2) to establish a prerequisite under Texas law for Flores's breach of contract for failure to provide UIM benefits claim against Arch.  The Court concludes that the primary

purpose of Flores's amendment is not to defeat federal jurisdiction.  The first factor weighs in favor of permitting the amendment.

### 2)  Whether plaintiff has been dilatory in asking for the amendment

The second factor is "whether Flores has been dilatory in asking for the amendment." *Hensgens*, 833 F.2d at 1182.  "Generally a plaintiff is not dilatory in seeking to amend a complaint when no trial or pre-trial dates [have been] scheduled and no significant activity beyond the pleading stage has occurred."  *Boyce*, 992 F. Supp. 2d at 720 (internal quotations omitted); s*ee also Smith v. Robin Am., Inc.*, Civ. A. H-08-3565, 2009 WL 2485589, at *6 (S.D. Tex. Aug. 7, 2009).  District courts in the Fifth Circuit have generally found plaintiffs to be dilatory when the proposed amendment is not filed within two months after the filing of the original complaint or within thirty days after the notice of removal.  *See Multi-Shot, LLC v. B & T Rentals, Inc.*, Civ. A. No. H-09-3283, 2010 WL 376373, at *9 (S.D. Tex. Jan. 26, 2010) (citing *Irigoyen v. State Farm Lloyds*, No. CA-C-03-324-H, 2004 WL 398553, at *4 (S.D. Tex. Jan. 5, 2004)).  A court may also consider that the plaintiff knew of the facts underlying the potential defendant's negligence at the time it filed suit in state court in its dilatory inquiry.  *See Connoisseur Doors, Inc. v. Haney Corp.*, No. SA-96-CA-146, 1996 WL 156557 at *3 (W.D. Tex. Apr. 1, 1996) (J. Biery) (where the Court held that the plaintiff knew of the facts underlying negligence of the non-diverse party and thus made the plaintiff's dilatory in asking for an amendment destroying diversity fourteen days after removal); *Anzures*, 886 F. Supp. 2d at 565 (where plaintiff "did not seek to add [the non-diverse party] until eight months after he filed the case in state court, seven months after [the defendants] removed the case . . . and nearly two months after the Court's deadline to amend the pleadings and join parties had expired").

Here, Flores made two attempts at amending the complaint (docket nos. 5, 15).   Flores originally attempted to amend the complaint with the Stricken Amendment (docket no. 5) eighteen days after the notice of removal (docket no. 1), well within the thirty-day "limit" for being dilatory.  After the Court granted the motion to strike, which was filed sixteen days after the Stricken Amendment was filed, Flores filed a motion for leave to file the First Amended Complaint (docket no. 15).  This First Amended Complaint was filed fifty days after the notice of removal.  Flores filed the Stricken Amendment two months and two days after filing the original complaint, and filed the First Amended Complaint three months and three days after the filing of the original complaint.

Additionally, Flores filed the Stricken Amendment sixteen days before Arch filed the scheduling order (docket no. 12).  No trial or pre-trial dates had been scheduled and no significant activity beyond the pleading stage had occurred at this point except the motion to strike Flores's Stricken Amendment (docket no. 11).  Flores filed the First Amended Complaint fifteen days after the Court issued the Scheduling and Docket Control Order (docket no. 13). The First Amended Complaint was necessitated by the motion to strike, which was entered the day before the scheduling order was issued by the Court.  Thus Flores takes limited blame for the pending motion being filed after the scheduling order.

The Fifth Circuit has not addressed how to assess the dilatoriness of proposed amendments that were improperly filed, but the second factor asks whether the plaintiff was dilatory in "asking for an amendment."  *Hensgens*, 833 F.2d at 1182.  This Court construes "asking for an amendment" as attempting to amend the complaint, which Flores did before the scheduling order and only eighteen days after removal, and that weighs against finding Flores dilatory.

Arch argues that *Connoisseur Doors* and *Anzures* show that Flores was dilatory in asking for an amendment.  Docket no. 16, at 5.  In *Anzures*, the plaintiff knew the identity of the non-diverse party and asked for an amendment eight months after he filed the case in state court, seven months after removal, and nearly two months after a court deadline to amend the pleadings and join parties had expired.  886 F. Supp. 2d at 565.  Here, Flores asked for an amendment two months and two days after the original state court petition, eighteen days after removal, and Flores did not violate any court mandated deadlines.  *Connoisseur Doors* addresses the issue of dilatoriness in a single sentence that does not provide reasoning and that the Court believes is aimed more towards the "primary purpose of the amendment" factor than the dilatory factor. 1996 WL 156557, at *3 ("[T]he facts indicate plaintiff has not been diligent in requesting the amendment to add [the non-diverse party] as a defendant because they knew of the facts that underlie their negligence claim against it at the time it filed suit in state court.").  Thus, the Court finds neither *Connoisseur* nor *Azures* compelling when analyzing Flores's dilatoriness.

Considering Flores asked for an amendment (the Stricken Amendment) within the period normally considered timely and before the Court entered a scheduling order, and that the First Amended Complaint is identical to the Stricken Amendment, the Court finds Flores's actions in seeking the amendment were timely despite Flores knowing the facts underlying the negligence claim against Mendez before removal.   Therefore, the second factor weighs in favor of permitting the amendment because Flores was not dilatory in seeking the amendment.

**3) Whether the plaintiff will be significantly injured if amendment is not allowed**

The third factor is "whether the plaintiff will be significantly injured if the amendment is not allowed."  *Hensgens*, 833 F.2d at 1182.  When analyzing this factor, courts look to "whether a plaintiff can be afforded complete relief in the absence of the amendment."  *Lowe*, 2010 WL

3359525, at *3 (S.D. Tex. Aug. 23, 2010).  Courts also look to "whether the plaintiff will be forced to litigate their action against the non-diverse defendants in a different court system, on a different timetable, subject to different procedural rules and conflicting results, and under the weight of additional financial burden." *Adey/Vandling*, 2012 WL 534838, at *4.

As discussed above, Flores's negligence claims against Mendez are a prerequisite to the breach of contract claim against Arch, *Hamburger*, 361 F.3d at 880, and may also impact the breach of good faith, DTPA and Insurance Code violation claims, *see Owen v. Employers Mut. Cas. Co.*, No. CIV. 3:06-CV-1993-K, 2008 WL 833086, at *4 (N.D. Tex. Mar. 28, 2008) (abating DTPA and breach of good faith claims until a liability determination against the insurer for breach of contract for failing to provide UIM benefits was made).

Flores's claims against Mendez are prerequisites for one, and possibly all, of Flores's claims against Arch.  Denying Flores's First Amended Complaint and forcing her to pursue her claims against Mendez in a different case in state court separates the claims, puts them on different timelines in separate forums, and will cost Flores time and money.  This all places Flores under a burden, delaying recovery and making recovery more difficult.

Arch argues that "[l]itigating separate claims in state and federal court is not a significant injury under *Hensgens*." Docket no. 16, at 5 (citing *Arthur v. Stern*, No. H-07-3742, 2008 WL 2620116 at *6 (S.D. Tex. June 26, 2008); *Apollo Alternative Fuels Co.*, *LLC v. Energy Ventures Organization*, No. 3:06-CV-1278-L, 2007 WL 1002243 at *3 (N.D. Tex. March 31, 2007)).  The amended complaints in *Stern* and *Apollo* did not contain new claims that were mandatory prerequisites of claims asserted against already included defendants, and the present case presents more than just the threat of litigating in separate courts; Flores will in fact have to do so

if he is to recover against Arch.  While not a large injury, this is some injury to Flores.  The third factor weighs slightly in favor of allowing the amendment.

### 4) Any other factors bearing on the equities

Finally, the Court should consider any other factors bearing on the equities of the case. *Hensgens*, 833 F.2d at 1182.  The parties point to no other factors that might bear on the equities in this case.

Weighing all of the factors, the Court finds that it should permit the First Amended Complaint.  The primary purpose of the First Amended Complaint is not to defeat federal jurisdiction because Flores has a valid claim against Mendez that is a prerequisite to one of his claims against Arch.  Also, Flores was not dilatory in proposing the amendment, rejection of the amendment would injure Flores, and allowing the amendment would promote efficiency for the parties and to the courts.  All of the *Hensgens* factors weigh in favor of allowing the amendment. While Arch is correct in arguing that the Court's analysis of Flores's proposed amendment should not rely on a "rigid distinction of whether the proposed added party is an indispensable or permissive party," (docket no. 16, at 5) (quoting *Gallegos*, 2009 WL 4730570, at *2), Arch is also correct in stating that the joinder of non-diverse parties is "committed to the sound discretion of the district court" (docket no. 16, at 5) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999); see also *Hensgens*, 833 F. 2d 1179, 1182 ("[T]he district court, when confronted with an amendment to add a nondiverse nonindispensable party, should use its discretion in deciding whether to allow that party to be added.").  The Court has not based its decision on a "rigid distinction" of "indispensable or permissive party."  It bases its decision to allow the amendment that would destroy diversity on the *Hensgens* factors.  The Court thus grants the motion for leave to amend the complaint.

## IV. CONCLUSION

For the above reasons, the Court GRANTS Plaintiff's motion for leave to file the first amended complaint. Docket no. 15.   Where a court permits the amendment of a plaintiff's pleadings to add a non-diverse defendant, thereby destroying diversity, the court must then remand the action to state court.   28 U.S.C. § 1447(e); *Hensgens*, 833 F.2d at 1182. Accordingly, the Clerk is directed to REMAND this case to state court and to close the case.

It is so ORDERED.

SIGNED this 17th day of July, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE